**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**WILLIAM HENRY STEPHENS, JR.,**

      **Plaintiff,**

**vs.**                               **CIVIL ACTION NO. 3:17-CV-00952**

**RICHARD KERN, HPD. PFC 428,**
**TRAVIS HAGAN, HPD. CPL. 420,**
**JOHN DOE #1, and JOHN DOE #2,**

      **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are Defendants' **_Motion for Summary Judgment_** and supporting **_Memorandum of Law_**. (ECF Nos. 35 and 36) By Order entered on July 13, 2017, this matter was transferred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 13) Having examined the Complaint (ECF No. 2) and having considered the pleadings filed herein, as well as pertinent legal authority, the undersigned concludes that Defendants' **_Motion_** should be **GRANTED**.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

The background of this case concerns events occurring on December 15, 2016 when Plaintiff was stopped by Defendants Kern and Hagan for an alleged DUI investigation. Plaintiff asserts that he exited his vehicle and was "seated on the grass" in the back yard of a residence. Plaintiff then heard a K-9 and "curled up in the fetal position" although Defendants "clearly saw" that Plaintiff was not resisting arrest or fleeing. Defendants ordered the K-9 to attack Plaintiff which caused "deep lacerations and cut arteries, tendons" to his left arm. Despite Plaintiff's repeated requests to stop the K-9, Defendants only laughed at Plaintiff. Plaintiff asserts that

Defendants also stated, "how does that feel nigger." Plaintiff begged Defendants to stop and "felt less than human" but Defendants laughed and stated that "it was exciting to them to watch."

Plaintiff asks for $250,000 for the damages to his left arm and $200,000 in punitive damages because of the "long term harm" he suffered because this was a racially motivated attack.

## PROCEDURAL HISTORY

On January 26, 2017, Plaintiff, *pro se*,[1] filed his civil Complaint against Defendants, Huntington police officers Richard Kern and Travis Hagan as well as two unidentified Huntington police officers, John Doe #1 and #2 for excessive force.[2] (ECF No. 2) On July 13, 2017, a scheduling order was entered providing the parties certain deadlines related to discovery and for filing dispositive motions. (ECF No. 14) On September 25, 2017, Defendants filed their motion to compel Plaintiff to respond to discovery (ECF No. 18); the undersigned ordered Plaintiff to respond to Defendants' motion to compel by October 25, 2017. (ECF No. 19) On December 13, 2017, Defendants filed their motion to dismiss Plaintiff's Complaint for failure to prosecute or alternatively, for sanctions and for modification of the scheduling order. (ECF No. 20) On December 14, 2017, the undersigned issued a Roseboro notice[3] to Plaintiff to respond to Defendants' motion by December 29, 2017. (ECF No. 25)

On December 28, 2017, Plaintiff filed his response and a "declaration" to Defendants' motion. (ECF Nos. 27 and 28) On January 5, 2018, Defendants' filed their reply. (ECF No. 30) On January 10, 2018, this Court deferred ruling on Defendants' motion to dismiss to the extent

---

[1] Because Plaintiff is acting *pro se*, the documents he has filed in this case are held to a less stringent standard than had they been prepared by a lawyer, therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972).

[2] Pursuant to Haines, a liberal interpretation of Plaintiff's claims is that Defendants inappropriately used a K-9 to excessive levels during his arrest.

[3] Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975); because Plaintiff is acting *pro se*, the Court issued its Order notifying Plaintiff of his right to file a response to Defendants' Motion and further ordered that Plaintiff file any response with the Clerk of this Court.

that it sought dismissal of this matter for failure to prosecute and for sanctions against Plaintiff but granted the motion to modify the scheduling order to allow the parties to engage in discovery and to extend the deadline to filing dispositive motions. (ECF No. 31) The primary reason for the modification of the scheduling order was due to Plaintiff's allegation that he withdrew his guilty plea before the District Court[4] and that he had fired his retained counsel who was supposed to assist Plaintiff in responding to Defendants' discovery requests. (Id.) Because his former counsel did not return the discovery materials to Plaintiff, who was then and remains incarcerated, this provided the basis for Plaintiff's excusable delay in responding to Defendants' discovery requests. (Id.)

Since then, Defendants deposed Plaintiff and in accordance to this Court's scheduling order, on June 11, 2018 Defendants filed their ***Motion for Summary Judgment*** and ***Memorandum of Law*** in support of same. (ECF Nos. 35 and 36) Defendants also attached several Exhibits to their ***Motion***: (1) a copy of Plaintiff's Complaint; (2) this Court's Scheduling Order; (3) Defendants' Certificate of Service dated August 14, 2017 of their First Set of Interrogatories and Requests for Production of Documents to Plaintiff; (4) Defendants' Motion to Compel Plaintiff to Respond to Defendants' First Set of Interrogatories and Requests for Production of Documents filed on September 25, 2017; (5) this Court's September 25, 2017 Order directing Plaintiff to file a response to Defendants' Motion to Compel; (6) Defendants' Motion to Dismiss for Failure to Prosecute or, in the Alternative, Motion for Sanctions and Modification of Operative Scheduling Order filed on December 13, 2017; (7) this Court's January 10, 2018 Order, described *supra*; (8) one page of Plaintiff's letter-form response to Defendants' First Set of Interrogatories and

---

[4] The undersigned notes that the District Court denied Plaintiff's request to withdraw his guilty plea and has since sentenced Plaintiff in criminal action number 3:17-cr-00132; the appeal of Plaintiff's conviction is presently pending before the Fourth Circuit Court of Appeals.

objection to Defendants' Request for Production of Documents;[5] (9) portions of Plaintiff's deposition transcript taken on April 4, 2018; (10) the stipulation of facts dated October 17, 2017 between Plaintiff and Assistant United States Attorney Joseph F. Adams concerning the relevant conduct and the total drug weight seized by law enforcement during the traffic stop on December 15, 2016 that is subject to this civil action in addition to the seizure related to the subsequent search of a residence used by Plaintiff in Huntington, West Virginia; and (11) the USB of Officer Kern's dashcam video during the December 15, 2016 incident leading to the traffic stop. (ECF Nos. 35-1, 35-2, 35-3, 35-4, 35-5, 35-6, 35-7, 35-8, 35-9, 35-10, and 35-11, respectively.)

Subsequently, on June 13, 2018, this Court issued another Roseboro notice to Plaintiff, as a reminder to file his response to Defendants' ***Motion*** with the Clerk no later than July 11, 2018. (ECF No. 37) Because Plaintiff failed to file a response to the ***Motion*** by the deadline, and it had been discovered that he had been transferred to another facility, the Court reissued the Roseboro notice to Plaintiff and imposed another filing deadline of August 9, 2018.[6] (ECF Nos. 39 and 40) On August 13, 2018, Plaintiff filed a request for a ninety-day extension for his response to Defendants' ***Motion*** (ECF No. 42); the undersigned provided a forty-five day extension to the deadline, and ordered that Plaintiff file his response no later than September 28, 2018. (ECF No. 45)

Because Plaintiff again failed to file his response by the deadline, the undersigned issued an order on October 12, 2018 directing Plaintiff to show cause in writing why this matter should not be dismissed for his failure to prosecute. (ECF No. 46) On November 14, 2018, Plaintiff filed

---

[5] Defendants explained that they submitted Plaintiff's discovery responses "in part due to privacy concerns." (ECF No. 36 at 3)

[6] The undersigned also denied as moot Defendants' ***Motion to Compel*** Plaintiff to respond to discovery (ECF No. 18) because they had been able to take Plaintiff's deposition. Additionally, the undersigned denied without prejudice Defendants' ***Motion to Dismiss for Failure to Prosecute, or in the Alternative, Motion for Sanctions*** (ECF No. 20) and invited Defendants to renew their Motion to Dismiss in the event Plaintiff failed to respond to the Motion for Summary Judgment.

his response to this Court's show cause order, explaining that he is attempting to assemble the necessary information in order to respond to Defendants' ***Motion*** and that he fully intends to prosecute his Complaint. (ECF No. 47)

By Order entered on November 20, 2018, the Court permitted Plaintiff a "last and final" deadline of January 4, 2019 to file his response to Defendants' ***Motion***. Finally, on January 7, 2019, Plaintiff's ***Motion of Exhibits*** (ECF No. 49) and ***Affidavit*** (ECF No. 50) were filed.[7] On January 16, 2019, Defendants' filed their ***Reply in Support of Motion for Summary Judgment and Motion to Strike and Exclude Plaintiff's "Motion of Exhibits" and "Affidavit"*** (ECF No. 51) Accordingly, this matter is fully briefed and ready for resolution.

### Defendants' Argument in Support of Motion for Summary Judgment

As an initial matter, Defendants contemporaneously renew their ***Motion to Dismiss for Failure to Prosecute and for Sanctions*** because Plaintiff repeatedly "pled the fifth" in response to very relevant questions concerning the incident leading up to Plaintiff's arrest and subsequent claims in this action. (ECF No. 36 at 3; ECF No. 35-9 at 2) Defendants rely on In re: Grand Jury Subpoena, where the Fourth Circuit found that a party's silence may bar that party from assertions that would allow him to prevail in litigation, and that "the Fifth Amendment privilege does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." 836 F.2d 1468, 1472 (4th Cir. 1987) (citing Baxter v. Palmigiano, 425 U.S. 308, 334, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). (ECF No. 36 at 3-4)

Therefore, Defendants assert the following relevant material facts as being undisputed, and as a result, Plaintiff cannot demonstrate that Defendants used an unreasonable amount of force (ECF No. 36 at 4-5):

---

[7] The undersigned considers Plaintiff's response to be timely filed because the certificates of service indicated that Plaintiff mailed same on January 2, 2019.

(1) A Huntington police officer attempted to conduct a traffic stop of a vehicle operated by Plaintiff on December 15, 2016. (See ECF No. 35-10)

(2) The dashcam video (contained on a USB flash drive) from Defendant Kern's cruiser shows that Plaintiff fled down an alley at a high rate of speed after the attempted traffic stop. (See ECF No. 35-11)

(3) At the time of the attempted traffic stop, Plaintiff was known by law enforcement to carry firearms. (See ECF No. 35-10)

(4) Plaintiff fled on foot (See ECF No. 35-11) and was observed by law enforcement "throwing 12 baggies containing cocaine base weighing approximately 9.3 grams and 9 baggies containing heroin weighing approximately 4.8 grams." (See ECF No. 35-10)

(5) Plaintiff ran down an alleyway and hid between a garbage can and garbage bag behind a personal residence under cover of darkness. (See ECF No. 35-9 at 5-6)

(6) Defendant Kern used a K-9 unit to locate and detain Plaintiff; after his arrest, Plaintiff was taken to the hospital where he was treated and released. (Id. at 7)

(7) Plaintiff has had no other treatment for his alleged injuries. (Id. at 7-8)

Defendants argue that the constitutional prohibition on the use of excessive force by law enforcement is gauged by whether it exceeds the bounds of "objective reasonableness" which can be evaluated under the following criteria: (1) "the severity of the crime at issue"; (2) "whether the 'suspect poses an immediate threat to the safety of the officers or others' "; and (3) "whether the suspect is 'actively resisting arrest or attempting to evade arrest by flight' ". Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (quoting Graham v. O'Connor, 490 U.S. 386, 396 (1989)) (ECF No. 36 at 6-7) Defendants also point out that "[t]he extent of the plaintiff's injury is also a relevant consideration." Id. (citing Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994)).

(Id. at 7) In short, the Court must determine whether the totality of the circumstances justified Defendants use of a K-9 to effectuate Plaintiff's arrest. Tennessee v. Garner, 471 U.S. 1, 8-9 (1985). (Id. at 7-8)

Defendants assert that based on the facts asserted *supra*, they had reasonable belief that Plaintiff posed an immediate threat to themselves and to others as he was known to carry firearms; that Plaintiff was actively attempting to evade arrest by driving dangerously fast down alleyways and hiding under cover of darkness; and that Plaintiff's injuries were minor as he was treated and released and received no follow-up care. (Id. at 8) Because Plaintiff has asserted his Fifth Amendment privilege in this litigation, these undisputed material facts demonstrate that Defendants acted objectively reasonable under the circumstances. (Id.)

Additionally, Defendants assert qualified immunity from Plaintiff's claims because the use of a K-9 unit to effectuate Plaintiff's arrest was proper and not prohibited by any Fourth Amendment principle requiring Defendants to withhold use of a K-9 under these particular circumstances, and further, the use of a K-9 was not "plainly incompetent" or in "knowing violation of the law." White v. Pauley, 137 S.Ct. 548, 551, 196 L.Ed.2d 463, 468 (2017) (citing in part, Mullenix v. Luna, 136 S.Ct. 305, 193 L.Ed.2d 255, 257 (2015)). (Id. at 8-10)

Finally, Defendants ask the Court to dismiss Defendant Hagan with prejudice because Plaintiff testified that Defendant Hagan was improperly named in this lawsuit. (Id. at 1, fn1, 11)

In sum, Defendants ask for summary dismissal from this lawsuit. (Id.)

### **Plaintiff's Responses**

Plaintiff asserts that he has no intention of abandoning this cause of action and requests the Court to not only interpret his pleadings liberally due to his *pro se* status, but also requests "that the Court modify its standardized scheduling to accommodate" him due to his incarcerated status,

as he "did not have access to legal materials"[8] while incarcerated at the Carter County Detention Center. (ECF No. 47 at 1, 2, 3, 4) Plaintiff contends that Defendants' ***Motion*** "is fraught with self-serving statements that are not supported by the evidence that the Plaintiff has sought from the Huntington Police Department and the Defendants."[9] (Id. at 2)

Plaintiff states that "the incident" pertinent to this lawsuit led to the "retaliatory action(s) being taken by the Defendants in violation of the Plaintiff's First Amendment Right to Redress, and as such, the Plaintiff must ask the Court to deny the Defendants' ***Motion*** [] and add another issue to the Complaint[.]" (Id.) Plaintiff alleges that after service of process was served on these Defendants, they acted under "color of their authority" in violation of Plaintiff's First Amendment Right to Redress because "Plaintiff's original criminal case was [d]ismissed about two months before the process in this action was served[.]" (Id. at 3)

Plaintiff further alleges that "the original Magistrate Judge for the criminal action against the Plaintiff has ties/connections to the Offutt Nord Burchett, PLLC, such that there is the strong implication that a Conflict of Interest, either to this civil action, or to his criminal action, that justice might be impaired should the Offutt Nord law firm continue in their representation of the Defendants."[10] (Id.)

In further support of his claims, Plaintiff filed numerous exhibits and has provided

---

[8] Plaintiff reminds the Court that his then court-appointed counsel in his criminal proceeding was supposed to complete the interrogatories issued by Defendants, but did not do so and did not return these materials to Plaintiff. (ECF No. 47 at 3) This issue has already been addressed by this Court on January 10, 2018 (ECF No. 31) when it ordered Defendants to resend their discovery requests to Plaintiff; Defendants have represented that subsequently, Plaintiff "submitted a letter-form response" to these requests on February 26, 2018. (ECF No. 36 at 3)

[9] The undersigned notes that the docket maintained by CM/ECF contains no indication that Plaintiff submitted any requests for discovery from Defendants or the Huntington Police Department.

[10] The undersigned notes that Plaintiff only asserts speculative and conclusory statements regarding the alleged conflict of interest between Magistrate Judge Eifert and defense counsel of record, however, this case was reassigned to the undersigned Magistrate Judge immediately upon the filing of Defendants' Answer by counsel of record. (ECF No. 13) To the extent that Plaintiff has made allegations of any bias or lack of neutrality by the undersigned to warrant disqualification, the undersigned **FINDS** Plaintiff's allegations or arguments lack merit.

descriptions therefor:

"Exhibits A and B" concern Plaintiff's "attempt to obtain discovery" that is related to his claims, however, Plaintiff explains his efforts have "failed due to professional dilatory practices." (ECF No. 49 at 4-9)[11]

"Exhibit C" is the denial to Plaintiff's Freedom of Information Act ("FOIA") requests "under dilatory tactics." (Id. at 10)[12]

"Exhibit D" is "Officer Paul Hunter's fabricated report of the plaintiff's driving with a revoked license." (Id. at 11)[13]

"Exhibit E" is a record concerning Plaintiff's driver's license status from the Michigan Department of State indicating that a request report on March 7, 2018 that his license status was "valid." (Id. at 12)

"Exhibit F" concerns an affidavit and complaint for a search warrant in the magistrate court of Cabell County, West Virginia submitted by Sgt. Paul Hunter that on or about June 25, 2017 in Cabell County Plaintiff committed the felony offense of conspiracy; Plaintiff asserts that he "was

---

[11] The undersigned notes that these Exhibits are form "Request for Information Pursuant to the West Virginia Freedom of Information Act" that appear to have been submitted by William H. Stephens, Sr. of Inkster, Michigan and are dated November 28, 2018. The requests are for information related to Cabell County, West Virginia "case numbers 17-MO6F-00638, 17-MO6M-04434, 17-F-33, 16MO6F01185, 16MO6M06976" which ostensibly pertain to the offenses occurring on June 29, 2017 and December 15, 2016 which included: DUI records; booking records; "computer and dispatch logs re: Dishman, Kern, Hunter, Moore"; affidavits supporting search warrants; pictures; affidavits and warrants for controlled buys; "chain of custody"; bodycams/vehicle cams; a "copy of list of all officers and their records for 12/15/16, 6/29/17 related to Stephens Jr."; "statements and debriefings against William H. Stephens, Jr."; "date of service of 1983"; a copy of the "true bill for federal indictment against William H. Stephens, Jr."; transport records; jail occupancy records; medical records; "arraignment in state court for 6/29/17 arrest and charges"; "all records and transcripts from 6/29/17 – 7/11/17"; holding cell records; "dockets"; and "magistrate records".

[12] This exhibit concerns a letter dated December 4, 2018 from Scott A. Damron, City Attorney for the City of Huntington to William H. Stephens, Sr. in Inkster, MI regarding his FOIA requests stating that the records are internal police records and exempt from the West Virginia FOIA statute and since "the defendant in these matter[s] is seeking to withdraw a plea", the criminal prosecution matter "is ongoing" and not disclosable except to "the defendant or his counsel" via discovery rules for criminal matters.

[13] This exhibit concerns the "narrative" of events surrounding the June 29, 2017 investigation of Plaintiff by the Huntington Police Department and FBI Drug Task Force; Sgt. Hunter reported that Plaintiff was operating a vehicle with a suspended license "for a previous DUI."

not charged with conspiracy on the federal level." (Id. at 1, 13)

"Exhibit G" is "evidence of the traffic stop in Ohio, which contradicts Paul Hunter's alleged investigation dates and causes them to be questionable." (Id. at 1-2)[14]

"Exhibit H shows that on April 18, 2017, the case was dismissed and the bond was no longer required. The court was paid its fines and the rest of the proceeds were returned to the surety." (Id. at 2)[15]

"Exhibit I" is the motion to revoke Plaintiff's bond filed by Lauren E. Plymale, Assistant Prosecuting Attorney for Cabell County in indictment number 17-F-33 filed on June 28, 2017; it was alleged that Plaintiff "failed to comply with the conditions of bond supervision". (Id. at 18) Plaintiff asserts that this motion was filed "without authority" as the bond in question "had already been returned to the surety, and the bondsman was not involved in arresting the plaintiff for the alleged . . . violation[.]" (Id. at 2) The Circuit Court of Cabell County granted the motion and entered a Bond Revocation Order on or about June 30, 2017. (Id. at 17)

"Exhibit J is the factually incorrect letter written by the probation officer, Christopher May, that was used to lure the plaintiff into the scheme Paul Hunter devised to arrest the plaintiff illegally." (Id. at 2)[16]

"Exhibit K" is the federal warrant issued for Plaintiff's arrest "in violation of due process

---

[14] This exhibit appears to be one page of an investigative report indicating Plaintiff was the subject of criminal investigations on June 25, 2017 in Wyandot County, Ohio and on June 25, 2017 in Cabell County, West Virginia. (Id. at 14)

[15] This exhibit concerns a Nolle Prosequi Order entered by the Circuit Court of Cabell County, West Virginia on April 18, 2017 in indictment number 17-F-33 by Circuit Court Judge Christopher D. Chiles. (Id. at 15)

[16] This exhibit is a letter dated June 23, 2017 from Christopher C. May of the Probation Department for the Sixth Judicial Circuit, Cabell County, West Virginia to the Prosecutor of Cabell County indicating that Plaintiff failed to comply with the conditions of bond supervision: on March 15, 2017 he was placed under bond supervision by Judge Chiles on indictment number 17-F-33; Plaintiff reported in on April 20, 2017 but had not reported since then. (Id. at 19)

according to the federal rules." (Id.)[17]

Finally, Plaintiff submits his affidavit[18] in response to Defendants' Motion and argues that Defendants' Motion "contains self-serving statements and errors in the factual background" and that "[t]he supposed factual evidence against the plaintiff was manufactured by the defendants through the manipulation of evidence from the criminal action filed subsequent to this complaint supposedly substantiates." (ECF No. 50 at 2) Further, "the firearm mentioned by the defense counsel does not show the serial number, nor whether it was or was not registered to the plaintiff or to anyone else at the residence where it was found." (Id. at 2-3)

Plaintiff contends that the actions of Defendants were "racially motivated", as Plaintiff is a black male and his girlfriend is a white female that "has not gone unnoticed by [Defendants]." (Id. at 3)

Plaintiff states that Defendants are not entitled to qualified immunity because they acted beyond the scope of their professional responsibilities and job duties and caused injury to Plaintiff "wantonly and willfully, with malice." (Id.) Plaintiff suffered from bits from the K-9 unit "up and down the arm" and that "at the time of the seizure of the plaintiff . . . he was in the rear area of a home and the K-9 unit had been past him without attacking the plaintiff once." (Id. at 4) It was only when Plaintiff was "apprehended" in the corner of the house by Defendant officers that Plaintiff repeated that he was unarmed with his hands up and arms outstretched, advising

---

[17] This exhibit concerns the criminal complaint filed against Plaintiff in case number 3:17-mj-00027 sworn by Paul Hunter, Task Force Agent, FBI before Magistrate Judge Cheryl A. Eifert on June 30, 2017 for violation of 21 U.S.C. § 841(a)(1) on June 29, 2017. (Id. at 20) The arrest warrant was issued on June 30, 2017 and executed on July 11, 2017. (Id. at 21)

[18] Plaintiff reasserts many issues he has raised previously, such as his lack of success in obtaining discovery, his ethics complaint against his former counsel, A. Courtney Craig, Esq., but also the circumstances surrounding his state charges from June 2017, his bond revocation proceedings in state court in June 2017 as well as his subsequent arrest, arraignment and plea concerning the June 2017 charges in federal court. (ECF No. 50 at 2, 3, 7, 9, 10, 11) However, for the sake of clarity and economy, the undersigned focuses on Plaintiff's specific responses that pertain to Defendants' ***Motion***.

Defendant officers that he was not resisting arrest and complying with their orders that "the officer stepped back and looked both ways to see if anybody was around, he then made a derogatory racial comment and ordered the attack from his K-9 unit dog." (Id.) Plaintiff maintains that the use of the K-9 unit was excessive force and that the medical records show the bite injuries as a result of Defendants' actions. (Id. at 5)

Plaintiff refers the Court to the allegations contained in his initial Complaint as his rebuttal to Defendants' version of the facts and further states that the entire transcript of his deposition should have been submitted to the Court for review as opposed to portions thereof which would also serve as rebuttal to Defendants' arguments. (Id. at 6-7) Because Plaintiff lost the assistance of his "jailhouse lawyer", he requests appointment of counsel for this "civil litigation only."[19] (Id. at 7) Plaintiff reminds the Court that the subsequent criminal action following this lawsuit is currently on appeal to the Fourth Circuit Court of Appeals, and "the documentation that is the proof of

---

[19] Appointment of counsel is authorized by 28 U.S.C. § 1915(e)(1). ("The court may request an attorney to represent any person unable to afford counsel.") There is no constitutional right to appointment of counsel in civil cases, and the decision whether to appoint counsel is within the discretion of the Court. Appointment of counsel for indigent plaintiffs having claims under Bivens is required only in cases presenting complex issues or exceptional circumstances and the plaintiff's ability to present the case is questionable. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent to the District Court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him."); Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975)("[I]t is well settled that in civil actions the appointment of counsel should be allowed only in exceptional cases . . .."); United States v. $27,000.00, More or Less in U.S. Currency, 865 F.Supp. 339, 340 (S.D.W.Va. 1994)(citing Mallard v. United States Dist. Court for the S. Dist. of Iowa, 490 U.S. 296, 300-02, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989); Spears v. United States, 266 F.Supp. 22 (S.D.W.Va. 1967)). In deciding whether to request representation for a civil litigant, the Court should consider the following factors: (1) whether the plaintiff has presented a colorable claim, (2) the nature and complexity of the factual and legal issues, (3) the plaintiff's capability to present his own case, (4) the degree of factual investigation involved and the plaintiff's ability to investigate adequately crucial facts related to his claims, (5) the extent to which the case is likely to hinge on credibility determinations, and (6) whether expert testimony must be presented. See United States v. $27,000.00, More or Less in U.S. Currency, 865 F.Supp. at 340-41; McNeil v. Lowney, 831 F.2d 1368, 1371-72 (7th Cir. 1987), cert. denied, 485 U.S. 965, 108 S.Ct. 1236, 99 L.Ed.2d 435 (1998); Maclin v. Freake, 650 F.2d 885, 887-89 (7th Cir. 1981)(per curiam); Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir.), cert. denied, 510 U.S. 1196, 114 S.Ct. 1306, 127 L.Ed.2d 657 (1993).

Having examined the record in this case and finding that the factual and legal issues presented are not complex and did not require extensive investigation or involve exceptional circumstances that meets the standard for appointment of counsel in a civil action, and finally, as the undersigned has recommended that this matter be dismissed on Defendants' *Motion for Summary Judgment*, Plaintiff's request for appointment of counsel is therefore **DENIED** as **MOOT**.

[Plaintiff's] allegations" highlight the racial profiling and the false statements made by Huntington police officers that led to his subsequent arrest. (Id.)

Plaintiff specifically contends that Defendant Kern used unreasonable force against him, and alleges that

> Upon seeing a flash of light, the plaintiff ran to a house backyard out of fear for his safety from being a victim of an event of gun violence. While in the backyard hiding, the plaintiff was lying in the fetal position. A dog appeared, sniffing, then disappeared. Seconds later, several officers appeared, including Officer Kern and his dog. The officers' flashlights and guns were pointed at Plaintiff. Officer Kern requested the plaintiff lie on his belly with palms up. The plaintiff complied while stating, "I am unarmed, I have no weapon, I'm not resisting, and I'm complying with your order." After going through the same scenario several times, Officer Kern stepped back, looked at the officers to the left and right, smirking, then, without warning, commanded the dog to attack the plaintiff, during which events he said a racial slur.

(Id. at 7-8) Plaintiff argues that the use of the K-9 without giving a verbal warning first is unreasonable pursuant to Kopf v. Wing, 942 F.2d 265 (4th Cir. 1991) and Vathekan v. Prince George's County, 154 F.3d 173 (4th Cir. 1998). (Id. at 8) Further, "[a]lthough the plaintiff was hiding, this was not an excuse for Officer Kern to justify that his actions were unreasonable under the circumstances." (Id.) Plaintiff points out that Defendant Kern admitted in the complaint that the palms of Plaintiff's hands were visible, though Defendant Kern claimed Plaintiff kept the back of his hands close to his body, but clearly, Plaintiff was unarmed and not a threat. (Id.) Plaintiff was surrounded by several officers and being held at gunpoint, therefore, Defendant Kern's use of the police dog and allowing it to continue to bite Plaintiff, who was not resisting arrest is unconstitutional. (Id. at 8-9)

Plaintiff again reminds the Court that the offenses stemming from his December 2016 arrest by Defendant Kern were dismissed. (Id. at 9-10) However, because Defendant Kern arrested Plaintiff on "allegedly driving under the influence, possessing controlled substances, and fleeing

and eluding while DUI", officers conducted an "illegal warrantless search of a residence that officers claimed the plaintiff stayed at", and Defendant Kern failed to issue a citation for this "illegal traffic stop", but was used as pretense to execute the illegal search "to hopefully obtain something to charge the plaintiff with." (Id. at 10) This in turn led to the "collusion" between Cabell County Circuit Court Judge Chiles and Assistant Prosecuting Attorney Plymale to unlawfully revoke Plaintiff's bond because "after officers were served their civil complaint notices, the probation officer, Christopher May" caused the Assistant Prosecuting Attorney to request Plaintiff's bond be revoked. (Id.) Because "important interrogatory evidence" was missing that his counsel failed to address with Plaintiff, Plaintiff would not have entered into a plea agreement had he been informed of the "viability of a suppression motion." (Id. at 11) Plaintiff also complains he was denied prompt presentment, as he was in state custody on June 29, 2017 but did not appear before the Magistrate Judge until July 11, 2017.[20] (Id.)

Plaintiff concludes that this illustrates the outrageous conduct by the "public officials" who acted outside of the professional color of law and that due to the injuries he has suffered as a result, is entitled to punitive damages totaling $450,000. (Id.)

### Defendants' Reply in Support of Motion for Summary Judgment and Motion to Strike and Exclude Plaintiff's "Motion of Exhibits" and "Affidavit"

Defendants' move to strike all of Plaintiff's Exhibits, asserting that they fail to relate to this civil action but instead relate to several of Plaintiff's criminal proceedings. (ECF No. 51 at 4)

---

[20] The undersigned notes that Plaintiff continues to conflate the issues regarding his guilty plea that is currently on appeal to the issues raised in this civil action. To the extent that Plaintiff contests his guilty plea in case number 3:17-cr-00132, the undersigned again directs Plaintiff is instructed to file a form Complaint initiating a new civil action and name as defendants those individuals responsible for his involuntary guilty plea. Plaintiff must also state what constitutional, statutory or common law rights he believes each defendant has violated and support each claim with specific factual allegations about each defendant's actions or omissions, and allege, with some degree of particularity, how each named defendant was involved in the alleged deprivation of his rights. Again, if not having done so previously, the Clerk is **DIRECTED** to mail a copy of a form Complaint and a blank Application to Proceed *in Forma Pauperis* to Plaintiff.

Defendants state that Plaintiff's "Exhibits A and B" appear to be FOIA requests that were served directly upon the City, not on counsel for the City or with this Court, were submitted six months after discovery had closed in this case, and have no bearing on this matter. (Id. at 4-5) Defendants further state that "Exhibit C" is a proper denial of the FOIA requests and are irrelevant and inadmissible in this proceeding; Plaintiff has previously engaged in appropriate discovery in this case, but these FOIA requests are an attempt to circumvent Defense Counsel's ability to preserve objections. (Id. at 5)

"Exhibit D" involves an individual who is not a named defendant and is irrelevant to this action; this Exhibit was not produced during discovery. (Id. at 5-6) "Exhibit E" is also irrelevant and not produced during discovery; whether Plaintiff had a valid license to drive did not permit him to speed, flee from police or possess heroin. (Id. at 6-7) The remaining Exhibits, F through K, relate to other incidents and unrelated to the to the civil action herein, and were not produced during discovery. (Id. at 7)

With regard to Plaintiff's "Affidavit", Defendants argue that Courts "[d]o not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." Buckner v. Sam's Club, 75 F.3d 290 (7th Cir. 1996) (internal citations omitted). (Id.) To the extent Plaintiff's Affidavit attempts to contradict his prior testimony provided herein, Defendants contend that such portions thereof should be stricken. (Id. at 7, 9) Defendants point out that numerous portions of Plaintiff's Affidavit have no bearing on this case and do not foreclose dismissal of this action, but are self-serving and contradictory statements being used to defeat Defendants' ***Motion***.[21] (Id. at 8)

---

[21] Having reviewed Plaintiff's Exhibits and noting that Plaintiff continues to conflate the issues at bar with subsequent criminal matters, the undersigned **FINDS** that Plaintiff's Exhibits are irrelevant to this claim of excessive force, were not obtained or proffered in accordance with the Federal Rules of Civil Procedure, and are submitted untimely as the

To the extent that Plaintiff alleges a racial motivation behind his arrest, Defendants dispute this claim, and argue that the objective reasonableness standard controls, and the subjective beliefs of an officer, whether good or bad, have no bearing on the determination of reasonableness standard. See, ex., <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). (<u>Id</u>.)

With respect to the cases Plaintiff cites in his Affidavit, Defendants argue that they do not further Plaintiff's position, but actually support Defendants' ***<u>Motion</u>***. (<u>Id</u>. at 9-11)[22] Defendants submit that there is no case law that prevents summary dismissal of this matter under the facts and law presented. (<u>Id</u>. at 11) Finally, Defendants point out that Plaintiff does not dispute that Defendant Hagan was improperly named and should be dismissed; Defendants further ask this Court to grant their ***<u>Motion</u>***. (<u>Id</u>. at 12)

## <u>THE STANDARD</u>

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an

---

discovery deadline had long expired. (See ECF No. 31) To that extent, the undersigned would recommend Defendants' ***<u>Motion</u>*** be **GRANTED as MOOT**, having determined that summary dismissal is appropriate in this case.

[22] The undersigned has reviewed the cases cited by Plaintiff and agrees with Defendants that in addition that they are "cited for general propositions of law", many of which provide the guiding jurisprudence herein, but several have been presented as Plaintiff's "distorted analysis of case law as applied to his newly-submitted evidence." (ECF No. 51 at 9) The undersigned briefly addresses the more pertinent cases as they relate to this action, *infra*.

essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Baber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure provides that

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: [] citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]

Accordingly, the undersigned finds that the Exhibits attached to Plaintiff's pleadings as well as the Defendants' pleadings may be properly considered for purposes of a motion for summary judgment.

## DISCUSSION

Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to

17

state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

With respect to Defendant Hagan, there are no factual allegations against him at all. Plaintiff does not contradict Defendants' assertion that Plaintiff improperly named Defendant Hagan in this suit, and indeed, Plaintiff testified that it was "a mistake" that Defendant Hagan was named in this suit. (See ECF No. 51-1 at 26) Plaintiff has not offered any facts related to Defendant Hagan that are material to his claims of excessive force that would require a jury's resolution. Therefore, as an initial matter, it is **RECOMMENDED** that the ***Motion to Dismiss*** with respect to Defendant Hagan should be **GRANTED** with prejudice.

With respect to the remaining Defendants, there are certain material facts that are not in dispute: (1) that on or about December 15, 2016, Plaintiff was operating a vehicle at nighttime; (2) that Defendants employed the police cruiser's emergency flashing lights and pursued Plaintiff; (3) that Plaintiff did not yield or stop and continued to drive at a high rate of speed away from the police cruiser; (4) that Plaintiff fled police by vehicle and then by foot[23]; (5) that Plaintiff was known by Defendants to possess firearms[24]; (6) that Plaintiff hid from Defendants to evade arrest[25]; (7) that Plaintiff was observed by Defendants throwing multiple baggies of drugs from his person during the pursuit[26]; (8) that Defendant Kern employed a K-9 unit to locate Plaintiff

---

[23] As noted *supra*, Plaintiff admits in his affidavit that "[u]pon seeing a flash of light, [he] ran to a house backyard[.]" (ECF No. 50 at 7) With respect to Defendants' allegations that Plaintiff fled by vehicle at a high rate of speed, Plaintiff does not specifically dispute these allegations, but has only asserted that his drivers' license was valid. (See ECF No. 49 at 1; ECF No. 50 at 4)

[24] Plaintiff does not specifically deny this allegation, but only states that "the firearm mentioned by the defense counsel does not show the serial number, nor whether it was or was not registered to the plaintiff or to anyone else at the residence where it was found." (ECF No. 50 at 2-3)

[25] Plaintiff admitted that he was "hiding" from Defendant police officers. (ECF No. 50 at 7, 8)

[26] Plaintiff does not deny this allegation, and has admitted that on December 15, 2016, he was arrested for "driving under the influence, possessing controlled substances, and fleeing and eluding while DUI" and that these charges were later dismissed in state court. (ECF No. 50 at 10)

while Plaintiff was hiding from police officers[27]; (9) that the K-9 was used to effectuate Plaintiff's arrest; and (10) that Plaintiff was taken to a hospital where he was treated and released for the alleged injuries as a result of his arrest[28].

## Excessive Force

The Fourth Amendment guarantees citizens the right to be free from unreasonable seizures, which bars the use of excessive force by law enforcement officers to effectuate a seizure. Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) A claim that law enforcement officials used excessive force in the course of making an arrest or other seizure of a person is analyzed under an "objective reasonableness" standard. Id. (quoting Graham v. O'Connor, 490 U.S. 386, 399, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). In determining what is reasonable, a court must carefully balance " ' the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U.S. at 396, 109 S.Ct. 1865 (quoting Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). That balancing act is accomplished by focusing on the facts and circumstances of each case, taking into account "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Yates v. Terry, 817 F.3d 877, 885 (4th Cir. 2016) (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865) "The extent of the plaintiff's injury is also a relevant consideration." Jones v. Buchanan, 325 F.3d 520 (4th Cir. 2003) (citing Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994)).

---

[27] Plaintiff admitted that while he was hiding, a K-9 unit appeared, sniffing, then disappeared, but attacked him upon Defendant Kern's command. (ECF No. 50 at 7-8)

[28] Defendants have asserted that after his arrest, Plaintiff was taken to the hospital where he was treated and released, and that this was "the only time that Plaintiff has treated for his alleged injuries." (ECF No. 36 at 5) Plaintiff has stated that he was taken to "Huntington Cabell Hospital, examined, given an MRI, and treated before being released back into the custody of the Huntington Police Officers." (ECF No. 28 at 2)

A court must consider the reasonableness of the force employed " 'in full context, with an eye toward the proportionality of the force in light of all the circumstances.' " Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015) (quoting Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005)). The Court of Appeals for the Fourth Circuit has recognized that " 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—[and] we take care to consider the facts from the perspective of a reasonable officer on the scene, and avoid judging the officer's conduct with the 20/20 vision of hindsight.' " Cooper v. Sheehan, 735 F.3d 153, 158–159 (4th Cir. 2013) (quoting Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir. 2002)).

Under the guidance provided by this jurisprudence, the situation before this Court presents a criminal suspect's flight from law enforcement, first by vehicle at a high rate of speed and then by foot, and his continued avoidance of arrest by hiding in a local citizen's back yard. Plaintiff does not specifically dispute Defendants' allegations that he attempted to evade arrest by fleeing in a vehicle and then on foot. Plaintiff does not specifically dispute throwing away drugs during his flight or that he was known by Defendants to carry firearms. Plaintiff does admit to trying to hide from Defendants in their attempt to arrest him. During his deposition, Plaintiff has "plead the Fifth" in response to Defendants' counsel's questions as to whether he was running from the police and for what reasons. (See ECF No. 35-9 at 2) During discovery, Plaintiff initially "objected" to Defendants' requests for production of documents due to his incarcerated status and this Court's denial of his request for subpoenas. (ECF No. 35-8) It is noted that some of the documents requested by Defendants included Plaintiff's medical records concerning Plaintiff's treatment for the alleged injuries he received as a result of Defendants' actions. (See ECF No. 18-1 at 11) It is further noted that in their discovery requests, Defendants provided Plaintiff Authorizations for his

medical records, requesting that he execute same by notary, and that Defendants agreed to obtain these records at no expense to Plaintiff and to provide Plaintiff with copies of same. (Id. at 12-13) Plaintiff did not execute any Authorizations for requests for medical records, but instead "objected" to same. (ECF No. 35-8) It is unclear from the transcript whether Plaintiff executed the Authorizations that were presented to him by defense counsel during his April 4, 2018 deposition (see, ECF No. 51-1 at 14); nevertheless, there are no medical records concerning Plaintiff's injuries before this Court.

"A party's silence . . . may bar that party from asserting facts which would allow him to prevail in litigation which will have severe financial consequences for the loser. Silence may also create inferences which are relevant and adverse to the party maintaining such silence." See In re Grand Jury Subpoena, 836 F.2d 1468, 1472 (4th Cir. 1988). The Supreme Court noted that the Fifth Amendment privilege "does not forbid adverse inferences against parties in civil actions when they refuse to testify in response to probative evidence offered against them." Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

Plaintiff's refusal to testify with respect to the allegations that he had been fleeing from Defendant police officers just prior to the use of the K-9 to effectuate his arrest coupled with his refusal and/or failure to execute authorizations in order for Defendants to obtain his medical records concerning the "deep la[c]erations and cut art[e]ries [and] tendons" (ECF No. 2 at 5) that Plaintiff allegedly suffered as a result of the K-9 unit's "bites" he sustained "up and down the arm" (ECF No. 50 at 4) has allowed such "adverse inferences" in this case.

Plaintiff has repeatedly argued that he was "fully complying" (ECF No. 27 at 5) with Defendant law enforcement officers' commands while assuring Defendant law enforcement officers that he was unarmed and not resisting, however, Plaintiff completely disregards

Defendants' factual allegations that he was actively fleeing by vehicle and on foot in the events leading up to the deployment of the K-9 unit to effectuate the arrest.[29] Plaintiff fails to respond at all to Defendants' allegations that he was observed throwing away baggies of drugs during his flight. Significantly, Plaintiff admits to hiding from Defendant law enforcement officers and completely disregards Defendants' allegations that Plaintiff was known to carry firearms, though Plaintiff states that no serial number was provided that indicated the firearm recovered "at the residence" was registered to Plaintiff. (ECF No. 50 at 3) Given these undisputed material facts, the use of the K-9 unit to locate and detain Plaintiff by Defendants meets the "objective reasonableness" standard endorsed by the Supreme Court and the Fourth Circuit. Graham, 490 U.S. at 399; Yates, 817 F.3d at 885. The fact that Plaintiff fails to put forth the necessary factual support for the alleged severe injuries that he sustained during his arrest underscores that Defendant's use of the K-9 was reasonable force in order to effectuate the arrest under the totality of circumstances presented in this case. Beyond Plaintiff's uncorroborated assertions that he suffered severe injuries from the K-9 unit's bites, the undisputed fact that he was treated and released back to the custody of law enforcement and underwent no further treatment indicates that Plaintiff's injuries were not severe, but minor.[30] [31]

---

[29] The undersigned reviewed Defendants' Exhibit K (ECF No. 38), which is the video (not audio) recording from Defendant Kern's cruiser dash cam, shows the subject nighttime pursuit down an alley way as well through business and residential areas while the cruiser's emergency lights were flashing. The dash cam recording also shows Plaintiff's flight on foot through a residential area. The recording also briefly features a law enforcement officer proceeding by foot through the residential area with a flashlight as well as the K-9 unit with its handler but not the actual arrest of Plaintiff.

[30] The number of injuries Plaintiff suffered as a result of the K-9 unit appears to be in some dispute: Defendants concede that Plaintiff suffered from "a puncture wound" (ECF No. 51 at 10 ,11), whereas Plaintiff has testified that he received several "holes" from the dog's bites. (See ECF No. 51-1 at 12) Nevertheless, Plaintiff testified that he was treated at Cabell Huntington, where in addition to a "CAT scan, MRI, whatever" (Id. at 33), "[t]hey really didn't even give me no Band-Aid – bandages – like, wiped the blood off" (Id. at 13), wrapped gauze around his arm (Id. at 43) and sent him "back to the police station" or "back to "jail." (Id. at 11, 33) Plaintiff was also treated with antibiotics at the Western Regional Jail. (Id. at 13, 44) Plaintiff testified that his wounds did not get infected and he received no additional treatment. (Id. at 44-45)

[31] The undersigned further notes that Plaintiff's reference to McCollum v. McDaniel, 32 Fed. App'x 49 (4th Cir. 2002), Kopf v. Wing, 942 F.2d 265 (4th Cir. 1991), Vathekan v. Prince George's County, 154 F.3d 173 (4th Cir. 1998), and

To put it succinctly, Plaintiff has not demonstrated the factual support necessary to defeat Defendants' ***Motion***, but only relies upon "conclusory allegations" which are insufficient. Baber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). Plaintiff's flight and hiding in a residential neighborhood under cover of darkness and penchant for carrying firearms caused Defendants to reasonably believe that Plaintiff was an immediate threat to not only law enforcement officers, but to others. Accordingly, having applied the Graham test of objective reasonableness, the undersigned **FINDS** that the use of the K-9 unit to effectuate Plaintiff's arrest in December 2016 was objectively reasonable.

### Qualified Immunity

"Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); see Smith v. Reddy, 101 F.3d 351, 355 (4th Cir. 1996) ("If the right was not clearly established at the relevant time or if a reasonable officer might not have known his or her conduct violated that right, the officer is entitled to immunity.").

Qualified immunity protects " 'all but the plainly incompetent or those who knowingly violate the law.' " White v. Pauley, 137 S.Ct. 548, 551, 196 L.Ed.2d 463, 468 (2017) (citing, in

---

Beck v. Elfreich, 821 F.3d 920 (7th Cir. 2016) are distinguishable from the case at bar insofar as the injuries sustained by plaintiffs therein concerned a dispute concerning the cause of the injuries (McCollum), or involved far more serious injuries than Plaintiff has alleged and presented conflicting testimony with regard to same (Kopf), or involved individuals were not a suspect or fleeing or known to carry firearms (Vathekan) or not fleeing or hiding or known to carry firearms (Beck). In short, the facts presented in those cases were far different from those presented here and have no bearing on this analysis.

part, <u>Mullenix v. Luna</u>, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Courts have established qualified immunity for government officials in consideration of a number of factors, including: the substantial cost of litigation against government officials; the distraction of government officials from their public responsibilities; and the disincentive to responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

In determining the validity of a qualified immunity defense, the Court should be guided by a two-pronged test: (1) whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and (2) whether that right was clearly established at the time of the purported violation. <u>Id</u>. The sequence of the steps is immaterial following <u>Pearson</u>. The Court may exercise discretion in deciding which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." <u>Id</u>. at 818. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Cooper v. Sheehan</u>, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).

The theme repeated from this jurisprudence is "reasonableness", and therefore, the critical question is whether the Defendant law enforcement officers' conduct was "reasonable." In this

case, based on the observable facts, that Plaintiff fled from the police by vehicle at a high rate of speed, then fled by foot while throwing baggies of drugs from his person, and then tried to hide in a residential neighborhood under cover of darkness, and that Plaintiff was known to Defendant law enforcement to carry firearms, that the use of a K-9 unit to locate and detain Plaintiff was not the product of "plainly incompetent" or in "knowing violation of the law", therefore, these Defendants are further protected under qualified immunity. White v. Pauley.

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants are entitled to summary dismissal of this matter, not only was their use of a K-9 unit objectively reasonable under the particular circumstances to effectuate Plaintiff's arrest, but also Defendants' actions are protected by qualified immunity. Even given the facts viewed in light most favorable to Plaintiff, there are no questions of fact as to whether he was deprived of an actual constitutional right that was clearly established at the time of the purported violation.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' ***Motion for Summary Judgment***. (ECF No. 35)

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to the *pro se* Plaintiff and to counsel of record.

ENTER: January 17, 2019.

Omar J. Aboulhosn
United States Magistrate Judge